## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO.

LUIS ANTONIO QUIÑONES GARCIA,

                Plaintiff,

vs.

AH ENTERTAINMENT, INC., and
ILIANES RUIZ,

                Defendants.

_____/

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff LUIS ANTONIO QUIÑONES GARCIA, a resident and citizen of Carolina, Puerto Rico, sues Defendants AH ENTERTAINMENT, INC. (d/b/a Flow la Movie), a Florida Corporation, and ILIANES RUIZ, Florida resident, and alleges as follows:

### Nature of Case, Jurisdiction, and Venue

1.    This case arises out of the conduct of Defendant AH Entertainment, Inc.'s ("AH"), through its alleged principal, Defendant Ilianes Ruiz ("Ilianes"), which has been directed at derailing Plaintiff Luis Antonio Quiñones Garcia's musical career and has caused AH to breach its contractual obligations towards Plaintiff and warrants the recission of the contract between the parties and the appointment of a receiver to

1

steward AH and ensure its compliance with its contractual obligations towards Plaintiff and others.

2.    This Court has diversity jurisdiction under 28 U.S.C. § 1332, because the amount in controversy exceeds the jurisdictional threshold, exclusive of interest and costs, and is between a citizen of Puerto Rico and citizens of Florida.

3.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred within this judicial district.  Furthermore, venue is also proper pursuant to a Choice of Forum included in the Recording Agreement that is the subject of this lawsuit.

**Plaintiff Luis Antonio Quiñones Garcia**

4.    Plaintiff Luis Antonio Quiñones Garcia ("Nio"), better known as Nio Garcia, was born on April 3, 1989 in San Juan, Puerto Rico. He now resides in Carolina, Puerto Rico.

5.    Plaintiff is currently one of the most prominent reggaeton artists in the world. He has over 16.2 million monthly listeners on Spotify, 3 million followers on Instagram, over 1.4 million followers on Facebook, and over 232,000 followers on Twitter.

6.    He burst onto the music scene in 2017 with his hit single, "Te Bote" and cemented his status as a reggaeton superstar when he released "Te Bote (Remix)" in 2019, which featured other reggaeton superstars, Bad Bunny, Ozuna, Nicky Jam, and Darrell. Since then he has released multiple hit records, including AM,  AM (Remix),

Tus Poses, Travesuras, and Travesuras (Remix), which have amassed millions of streams and have catapulted him to worldwide success.

7.      All of the aforementioned singles were executively produced by Jose Angel Hernandez ("Flow"), better known as Flow La Movie, who tragically passed away on December 15, 2021.

8.      Nio is currently under an Exclusive Recording Contract with AH Entertainment, Inc., a company founded and led by Flow until his untimely death. *See* Exhibit 1.

### AH Entertainment, Inc.

9.      Defendant AH Entertainment, Inc., d/b/a Flow La Movie, is a Florida for-profit corporation established in 2015 by Jose Angel Hernandez. AH's principal place of business is located at 317 Clearwater Lane, Kissimmee, Florida 34759. Upon information and belief, at the time of his death, Flow was the President, Resident Agent, and sole shareholder of AH.

10.     AH is a record label primarily focused on commercializing and releasing music by Puerto Rican reggaeton artists.

11.     Nio is currently AH's most prominent musical act and AH is under the obligation to use its best efforts to release and market Nio's musical recordings in order to grow Nio's career and pay Nio his corresponding royalties generated by the release of his musical recordings.

12.     Upon information and belief, at the time of Flow's death, Defendant Ilianes, his mother, was AH's Vice-president. It is not clear whether her ascension to AH's vice-presidency complied with Florida law.

### Ilianes Ruiz

13.     Defendant Ilianes Ruiz is a resident of Kissimmee, Florida and is listed as Defendant AH's President and Resident Agent. Upon information and belief, Ilianes unlawfully assigned herself those titles upon Flow's untimely death.

### Ilianes' Unlawful Seizure of Power over AH's Affairs

14.     On January 5, 2022, Ilianes filed an Annual Report with the Florida Division of Corporations listing herself as President and Resident Agent of Defendant AH. *See* Exhibit 2.

15.     Her seizure of AH's presidency and resident agency was unlawful at the time it was done, insofar as Flow was AH's sole shareholder, president, and resident agent at the time of his death and Ilianes did not have the legal authority to act on AH's behalf after Flow's death.

16.     Under Florida law, upon Flow's death, Flow's estate automatically became AH's sole shareholder.

17.     The matter of who constitutes Flow's estate, however, is currently being litigated in probate case no. 2022CP0022700000XX, pending before the Polk County Circuit Court.

18.     Specifically, on June 24, 2022, Ili.anes, through counsel, filed a *Petition for Administration and Establishment and Probate of Lost or Destroyed Will and Appointment of Personal Representative*.

19.     The document Ilianes now alleges is Flow's Last Will and Testament is dubious in many respects.

20.     Firstly, the original document is lost and only a copy exists.

21.     Second, the will was purportedly executed in or around July 2016, while Flow was detained pending trial in a Florida state court case and, most importantly, at a time when Flow was penniless and had no assets to bequeath to his heirs.[1]

22.     Third, and most importantly, despite Flow having two underage daughters at the time his alleged Last Will and Testament was executed, the will only names Ilianes as Flow's heir.

23.     On August 22, 2022, Flow's only surviving daughter, Keigelyan Hernandez-Pena ("Keigelyan"), filed a *Declaration that Proceeding is Adversary* and a *Motion for Extension of Time to Respond or Reply* to Ilianes' Petition.

24.     Upon information and belief, Keigelyan intends to challenge the validity of what Ilianes claims to be her father's Last Will and Testament and her request to be named Flow's personal representative.

---

[1] Flow was later acquitted of all charges in this case.

25.     If Keigelyan succeeds, an outcome that appears likely based on information and belief, Flow will be deemed to have died intestate and Keigelyan will be named his sole heir and, accordingly, AH's sole shareholder.

26.     Ilianes will, therefore, have no valid claim over Flow's estate and, accordingly, no legal authority to act on AH's behalf.

### Ilianes' Unfitness to Preside over AH's Affairs

27.     After unlawfully seizing control of AH's affairs, Ilianes has demonstrated an obvious unfitness to steward AH, as well as a general lack of knowledge of how the music industry operates.

28.     Her lack of fitness to run AH is best evidenced by her clear manifestation of her intent to derail Nio's career and her actions geared towards accomplishing that goal, such as constantly posting derogatory and disparaging remarks about Nio and his team on her, and AH's, social media accounts.

29.     Specifically, Ilianes and her cohorts have published upwards of 40 social media posts directed at Nio where they insult, threaten, and disparage him publicly. In other words, Ilianes has made it a point to display her vindictive feelings towards Nio as publicly as possible.

30.     In more private communications, Ilianes has constantly disparaged and ridiculed Nio, referring to him as a "pendejo" (asshole) and a "vendio" (sellout).

31.     In one particular instance, Ilianes refused to approve the budget, air transportation and accommodations for Nio's live performance at the Premios Lo

Nuestro awards show, a prominent awards show for the music industry, thus causing Nio to lose a golden opportunity to promote new music and further his brand.

32.    In a more recent instant of clear unfitness, Ilianes' questionable status as a member of Flow's estate has caused a multi-million-dollar sale of AH's catalog to stall, representing a substantial loss of income for Plaintiff, as well as for related entities The Orchard and Get Low Records LLC (d/b/a Glad Empire LLC), as well as recording artist, Julio Cruz Garcia, better known as Casper Magico.

### The Exclusive Recording Agreement

33.    On January 27, 2021, Nio and AH, represented by Flow, entered into an Exclusive Recording Agreement ("the Agreement").

34.    Pursuant to the Agreement, Nio was to render his services and talents as a performing artist exclusively to AH in exchange for a Recording Advance of one million dollars ($1,000,000) and royalties of 16% of the master recordings delivered and commercialized.

35.    In turn, AH's duty was the commercialization and marketing of Nio's music, along with the payment of corresponding royalties after recoupment of the Recording Advance.

36.    AH also has a duty under the Agreement to accountings of Nio's royalties as of each June 30th and December 31st for the prior 6 months for each period where transactions occur on which royalties are payable to Nio.

37.     The Agreement required Nio to deliver AH a minimum of 30 master recordings and/or the equivalent of one LP, provided the master recordings and/or the LP were commercially satisfactory to AH.

38.     The Agreement would terminate 12 months after the date of the initial commercial release of the last applicable master recording and/or LP, although AH reserved the right to exercise 5 optional periods under the same terms outlined above.

39.     Regarding breaches, the Agreement provides that Nio most provide 30 days written notice of any breach of the Agreement. If AH fails to cure that breach, Nio has the right to seek termination of the Agreement or seek damages in a competent court of law.

### Nio's Unreleased LP

40.     At some time prior to Flow's tragic death, Nio provided Flow with a 15-song LP ("LP"). Flow enthusiastically approved the LP for release.

41.     In fact, Flow individually approved every master recording that formed part of the LP and approved the production of 3 music videos, 2 of which had already been filmed prior to his death. The third video was scheduled to be filmed in Miami, Florida the week after Flow's untimely demise. Flow also approved the cover art for the LP.

42.     Prior to his death, Flow, Nio, and the rest of Nio's distribution team, Get Low Records LLC ("Get Low") and Orchard Enterprises ("Orchard"), had agreed that the LP was to be released sometime during the first trimester of 2022. In fact,

Flow, Get Low and Orchard had agreed to distribute and market the LP and Orchard had advanced two million dollars ($2,000,000) to distribute and market the LP.

### AH's Contractual Breaches

43.     After Ilianes assumed control of AH's affairs, she has stonewalled the release of Nio's LP, refusing to honor Flow's approval of the recordings, music videos, and release date. This is despite her duty, as AH's principal, to engage in good faith, commercially reasonable efforts to commercialize Nio's music and grow Nio's career.

44.     Moreover, despite the Agreement being signed in January 2021, AH has failed to provide the requisite accounting of royalties for the two periods that have elapsed since the inception of the Agreement.

45.     Both of these breaches constitute cause for Nio to rescind his contract with AH and for the recovery of damages resulting from those breaches.

46.     As a result, Nio notified AH of its breaches and requested AH cure the contractual breaches discussed above via letter sent to the law firm that claims to represent AH and Ilianes, Singh, Singh & Trauben, LLP.

47.     All conditions precedent to this suit have occurred or been performed.

### COUNT I
### Breach of Contract

48.     Plaintiff incorporates the allegations in paragraphs 1 through 47 as if fully set forth herein.

49.     As set out in detail above, Nio and AH entered into an Exclusive Recording Agreement on January 27, 2021.

50.     Nio has performed all his obligations under the Agreement.

51.     All conditions required by the Agreement for AH to perform its duties under the contract have occurred.

52.     AH materially breached its obligations to Nio by, *inter alia*, 1) arbitrarily failing to release his LP, despite Flow having determined that it was commercially satisfactory; 2) arbitrarily failing to release Nio's music videos, despite Flow having determined they were commercially satisfactory; 3) maliciously disparaging Nio through AH's social media accounts and the social media accounts of its principal, Ilianes Ruiz; and 4) failing to provide the periodic accountings required by the Agreement.

53.     Nio's career is suffering irreparable harm as a result of AH's breaches of the Agreement.

WHEREFORE, Plaintiff demands judgment against AH for all his damages in an amount to be determined at trial, but no fewer than three million dollars ($3,000,000), plus pre-judgment and post-judgment interest and costs of this suit, and for such other and further relief as this Court deems just and proper.

## COUNT II
### Recission of the Exclusive Recording Agreement

54.     Plaintiff incorporates the allegations in paragraphs 1 through 47 as if fully set forth herein.

55.     As set out in detail above, Nio and AH entered into an Exclusive Recording Agreement on January 27, 2021.

56.     Nio has performed all his obligations under the Agreement.

57.     All conditions required by the Agreement for AH to perform its duties under the contract have occurred.

58.     AH materially breached its obligations to Nio by, *inter alia*, 1) arbitrarily failing to release his LP, despite Flow having determined that it was commercially satisfactory; 2) arbitrarily failing to release Nio's music videos, despite Flow having determined they were commercially satisfactory; 3) maliciously disparaging Nio through AH's social media accounts and the social media accounts of its principal, Ilianes Ruiz; and 4) failing to provide the periodic accountings required by the Agreement.

59.     These breaches have frustrated the purpose of the Agreement, insofar as they have fractured the parties' relationship to a degree that working together to further Nio's career is not feasible.

60.     These breaches have also made performance of the obligations set forth in the Agreement impossible, insofar as they have fractured the parties' relationship to a degree that working together to further Nio's career is not feasible.

61.     There exists no adequate remedy at law to properly remedy the damages caused to Nio by AH's breaches of the Agreement.

WHEREFORE, Plaintiff demands judgment against AH rescinding the parties' obligations and returning the parties to their condition prior to the execution of the Exclusive Recording Agreement, plus pre-judgment and post-judgment interest and

costs of this suit, and for such other and further relief as this Court deems just and proper.

## COUNT III
### Breach of Fiduciary Duty

62.     Plaintiff incorporates the allegations in paragraphs 1 through 47 as if fully set forth herein.

63.     Nio deposited his trust in AH and Flow to manage his career and grow his brand when he signed the Agreement in January 2021.

64.      Ilianes, as AH's alleged principal and sucessor, has a fiduciary duty to act in the best interest of Nio, the artist AH represents.

65.     Ilianes has breached her fiduciary duty to Nio by, *inter alia*, 1) arbitrarily failing to release his LP, despite Flow having determined that it was commercially satisfactory; 2) arbitrarily failing to release Nio's music videos, despite Flow having determined they were commercially satisfactory; 3) and maliciously disparaging Nio through AH's social media accounts and her personal social media accounts of its principal, Ilianes Ruiz.

66.     These actions are contrary to Nio's interests and work against his growth as a recording artist.

67.     Nio's career is suffering irreparable harm as a result of Ilianes' breaches of her fiduciary duty to Nio.

WHEREFORE, Plaintiff demands judgment against AH for all his damages in an amount to be determined at trial, but no fewer than three million dollars

($3,000,000), plus pre-judgment and post-judgment interest and costs of this suit, and for such other and further relief as this Court deems just and proper.

**COUNT IV**
**Plaintiff Requests AH be Placed into Temporary Receivership**

68.     Plaintiff incorporates the allegations in paragraphs 1 through 47 as if fully set forth herein.

69.     Plaintiff has a valid claim of breach of contract against AH, has valid allegations that Ilianes is unfit to lead AH, and has good reason to believe Ilianes has illegally seized control over AH's affairs.

70.     There is a high probability that Ilianes has engaged in fraudulent conduct to place herself at the helm of AH's affairs.

71.     If the Court fails to appoint a receiver, Ilianes will continue to act in a way that will irreparably harm Nio's musical career.

72.     The typical legal remedies available to Plaintiff, such as damages and recission, are inadequate to address the imminent threat to Nio's career.

73.     There is no less drastic equitable remedy that will ensure Nio's career is not irreparably harmed by AH and Ilianes' conduct.

74.     The appointment of a receiver will do more good than harm to AH's affairs and to Plaintiff's' career, as it will ensure that a properly appointed individual, with AH's and Plaintiff's best interests in mind, will steward the company until such a time as the person with proper authority to act on AH's behalf is determined by the Polk County probate court.

WHEREFORE, Plaintiff requests the Court appoint a temporary Receiver to manage AH's affairs until such time as the matter of who constitutes Flow's estate is resolved.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury trial on all his claims.

**RESPECTFULLY SUBMITTED.**

In Miami, Florida this September 8th, 2022.

By:    */s/Edwin Prado-Galarza*

**Edwin Prado-Galarza, Esq.**
**PRADO LAW OFFICES, LLC**
513 W. Colonial Dr, Unit 5.
Orlando, FL, 32804
Tel. (407) 420-7926 / (787) 977-1411
E-Mail: pradolaw10@gmail.com
Florida Bar No. 1008115

*and*

Javier F. Micheo Marcial, Esq. (FBN 1009694)
javier.micheo@dmralaw.com
Juan C. Ramos-Rosado, Esq. (FBN 1002562)
juan.ramos@dmralaw.com
Manuel A. Franco, Esq. (FBN 126443)
manuel.franco@dmralaw.com
**DMRA LAW LLC**
1111 Brickell Avenue, Ste. 1550
Miami, FL 33131
Telephone: 305-548-8666