UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:22-cv-22858-KMM

LUIS ANTONIO QUIÑONES GARCIA,

        Plaintiff,

vs.

AH ENTERTAINMENT, INC., and
ILIANES RUIZ,

        Defendants.
_____/

## MOTION FOR PRELIMINARY INJUNCTION

COMES NOW the plaintiff, LUIS ANTONIO QUIÑONES GARCÍA ("Nio"), through his undersigned counsel, and respectfully files this motion for preliminary injunction, pursuant to Federal Rule of Civil Procedure 65, requesting the Court exercise its inherent authority to issue equitable remedies and enter an order appointing a temporary receiver to control Defendant AH ENTERTAINMENT, INC.'s ("AH") affairs and an order authorizing Plaintiff to continue to release his musical recordings in order to avoid the irreparable harm that Plaintiff is continuing to suffer due to the conduct of AH, through its alleged principal, Defendant ILIANES RUIZ ("Ilianes"), which has been directed at derailing Plaintiff's musical career and has caused AH to breach its contractual obligations towards Plaintiff and warrants the recission of the contract between the parties and the appointment of a receiver to steward AH and ensure its compliance with its contractual obligations towards Plaintiff and others.

1

## I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff Luis Antonio Quiñones Garcia, better known as Nio Garcia, was born on April 3, 1989 in San Juan, Puerto Rico. He now resides in Carolina, Puerto Rico. Plaintiff is currently one of the most prominent reggaeton artists in the world. He has over 16.2 million monthly listeners on Spotify, 3 million followers on Instagram, over 1.4 million followers on Facebook, and over 232,000 followers on Twitter. He burst onto the music scene in 2017 with his hit single, "Te Bote" and cemented his status as a reggaeton superstar when he released "Te Bote (Remix)" in 2019, which featured other reggaeton superstars, Bad Bunny, Ozuna, Nicky Jam, and Darrell. Since then he has released multiple hit records, including AM, AM (Remix), Tus Poses, Travesuras, and Travesuras (Remix), which have amassed millions of streams and have catapulted him to worldwide success. All of the aforementioned singles were executively produced by Jose Angel Hernandez ("Flow"), better known as Flow La Movie, who tragically passed away on December 15, 2021. Upon information and belief, at the time of Flow's death, Defendant Ilianes, his mother, was AH's Vice-president. It is not clear whether her ascension to AH's vice-presidency complied with Florida law.

### Ilianes' Unlawful Seizure of Power over AH's Affairs

On January 5, 2022, Ilianes filed an Annual Report with the Florida Division of Corporations listing herself as President and Resident Agent of Defendant AH. Her seizure of AH's presidency and resident agency was unlawful at the time it was done, insofar as Flow was AH's sole shareholder, president, and resident agent at the time of his death and Ilianes did not have the legal authority to act on AH's behalf after Flow's death.

---

[1] All allegations and claims included in the Complaint (Docket No. 1) are hereby incorporated by reference as if fully set forth herein.

2

Under Florida law, upon Flow's death, Flow's estate automatically became AH's sole shareholder. The matter of who constitutes Flow's estate, however, is currently being litigated in probate case no. 2022CP0022700000XX, pending before the Polk County Circuit Court.Specifically, on June 24, 2022, Ilianes, through counsel, filed a *Petition for Administration and Establishment and Probate of Lost or Destroyed Will and Appointment of Personal Representative*.

The document Ilianes now alleges is Flow's Last Will and Testament is dubious in many respects. Firstly, the original document is lost and only a copy exists. Second, the will was purportedly executed in or around July 2016, while Flow was detained pending trial in a Florida state court case and, most importantly, at a time when Flow was penniless and had no assets to bequeath to his heirs.[2] Third, and most importantly, despite Flow having two underage daughters at the time his alleged Last Will and Testament was executed, the will only names Ilianes as Flow's heir.

On August 22, 2022, Flow's only surviving daughter, Keigelyan Hernandez-Pena ("Keigelyan"), filed a *Declaration that Proceeding is Adversary* and a *Motion for Extensionof Time to Respond or Reply* to Ilianes' Petition.Upon information and belief, Keigelyan intends to challenge the validity of what Ilianes claims to be her father's Last Will and Testament and her request to be named Flow's personal representative. If Keigelyan succeeds, an outcome that appears likely based on information and belief, Flow will be deemed to have died intestate and Keigelyan will be named his sole heir and, accordingly, AH's sole shareholder. Ilianes will, therefore, have no valid claim over Flow's estate and, accordingly, no legal authority to act on AH's behalf.

---

[2] Flow was later acquitted of all charges in this case.

### Ilianes' Unfitness to Preside over AH's Affairs

After unlawfully seizing control of AH's affairs, Ilianes has demonstrated an obvious unfitness to steward AH, as well as a general lack of knowledge of how the music industry operates. Her lack of fitness to run AH is best evidenced by her clear manifestation of her intent to derail Nio's career and her actions geared towards accomplishing that goal, such as constantly posting derogatory and disparaging remarks about Nio and his team on her, and AH's, social media accounts.

Specifically, Ilianes and her cohorts have published upwards of 40 social media posts directed at Nio where they insult, threaten, and disparage him publicly. In other words, Ilianes has made it a point to display her vindictive feelings towards Nio as publicly as possible.In more private communications, Ilianes has constantly disparaged and ridiculed Nio, referring to him as a "pendejo" (asshole) and a "vendio" (sellout). In one particular instance, Ilianes refused to approve the budget, air transportation and accommodations for Nio's live performance at the Premios Lo Nuestro awards show, a prominent awards show for the music industry, thus causing Nio to lose a golden opportunity to promote new music and further his brand.

In a more recent instant of clear unfitness, Ilianes' questionable status as a member of Flow's estate has caused a multi-million-dollar sale of AH's catalog to stall, representing a substantial loss of income for Plaintiff, as well as for related entities The Orchard and Get Low Records LLC (d/b/a Glad Empire LLC), as well as recording artist, Julio Cruz Garcia, better known as Casper Magico.

### The Exclusive Recording Agreement

On January 27, 2021, Nio and AH, represented by Flow, entered into an Exclusive Recording Agreement ("the Agreement"). Pursuant to the Agreement, Nio was to render his

4

services and talents as a performing artist exclusively to AH in exchange for a Recording Advance of one million dollars ($1,000,000) and royalties of 16% of the master recordings delivered and commercialized. In turn, AH's duty was the commercialization and marketing of Nio's music, along with the payment of corresponding royalties after recoupment of the Recording Advance. AH also has a duty under the Agreement to accountings of Nio's royalties as of each June 30th and December 31st for the prior 6 months for each period where transactions occur on which royalties are payable to Nio.

The Agreement required Nio to deliver AH a minimum of 30 master recordings and/or the equivalent of one LP, provided the master recordings and/or the LP were commercially satisfactory to AH. The Agreement would terminate 12 months after the date of the initial commercial release of the last applicable master recording and/or LP, although AH reserved the right to exercise 5 optional periods under the same terms outlined above.

Regarding breaches, the Agreement provides that Nio most provide 30 days written notice of any breach of the Agreement. If AH fails to cure that breach, Nio has the right to seek termination of the Agreement or seek damages in a competent court of law.

**Nio's Unreleased LP**

At some time prior to Flow's tragic death, Nio provided Flow with a 15-song LP ("LP"). Flow enthusiastically approved the LP for release. In fact, Flow individually approved every master recording that formed part of the LP and approved the production of 3 music videos, 2 of which had already been filmed prior to his death. The third video was scheduled to be filmed in Miami, Florida the week after Flow's untimely demise. Flow also approved the cover art for the LP. Prior to his death, Flow, Nio, and the rest of Nio's distribution team, Get Low Records LLC ("Get Low") and Orchard Enterprises ("Orchard"), had agreed that the LP was to be released

sometime during the first trimester of 2022. In fact, Flow, Get Low and Orchard had agreed to distribute and market the LP and Orchard had advanced two million dollars ($2,000,000) to distribute and market the LP.

**AH's Contractual Breaches**

After Ilianes assumed control of AH's affairs, she has stonewalled the release of Nio's LP, refusing to honor Flow's approval of the recordings, music videos, and release date. This is despite her duty, as AH's principal, to engage in good faith, commercially reasonable efforts to commercialize Nio's music and grow Nio's career. Moreover, despite the Agreement being signed in January 2021, AH has failed to provide the requisite accounting of royalties for the two periods that have elapsed since the inception of the Agreement. Both of these breaches constitute cause for Nio to rescind his contract with AH and for the recovery of damages resulting from those breaches.

As a result, Nio notified AH of its breaches and requested AH cure the contractual breaches discussed above via letter sent to the law firm that claims to represent AH and Ilianes, Singh, Singh & Trauben, LLP. AH failed to cure those breaches and, accordingly, Nio filed suit on September 8, 2022, against AH and Ilianes alleging breach of contract and breach of fiduciary duty and requesting both recission of his contract with AH and the appointment of a temporary receiver to steward AH's affairs.

## II.   APPLICABLE LAW

A preliminary injunction is an "extraordinary and drastic remedy, not to be granted unless the movant clearly establishes the "burden of persuasion" as to each of the four prerequisites. Siegel v. LePore, 234 F.3d 1163, 1176 (11 Cir. 2000). Plaintiff must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury to the plaintiff outweighs the potential harm of the defendant; and (4) that the

injunction will not disserve the public interest. Palmer v. Braun, 287 F.3d 1325, 1329 (11th Cir. 2002) (citing Suntrust Bank v. Houghton Mifflin Co., 268 F.3d 1257, 1265 (11th Cir. 2001)). These elements should be proven by preponderance of the evidence. FHR TB, LLC v. TB Isle Resort, LP., 865 F. Supp. 2d 1172, 1191 (S.D. Fla. 2011).

### III. ARGUMENT

*a. Plaintiff is likely to succeed on the merits of his claims against AH and Ilianes.*

In order to establish a breach of contract claim under Florida law, plaintiff must show: (1) the existence of an agreement between the parties; (2) a material breach of the agreement by the defendant; and (3) damages resulting therefrom. Liebherr-Mining Quip. Colmar SAS v. Caste, Inc., No 11-CV-2287, 2013 WL 8519, at *3 (S.D. Fla. Jan. 7, 2013). Evidently, the first prerequisite is met since there is an agreement between the parties, as the parties executed an "Exclusive Recording Agreement" on January 27, 2021.

Plaintiff also satisfies the second element of a breach of contract claim under Florida law. A "material breach" of a contract is defined as a failure, without legal excuse, to perform any promise or obligation or that goes to the essence of the contract." ConSeal int'l Inc. v. Neogen Corp., 488 F. Supp. 3d 1257 (S.D. Fla. 2020). This is to say, a material breach of contract occurs when the covenant not performed is of such importance that the contract would not have been made without it. Seawatch at Marathon Condo. Ass'n, Inc. v. Guarantee Co. of N. Am., 286 So. 3d 823, 829 (Fla. Dist. Ct. App. 2019). AH and Ilianes are in clear breach of the Agremeent. First, Plaintiff has not been provided with the accounting of royalties generated by the release of his musical recordings, as stipulated in the Agreement. This, standing alone, is a breach sufficient to trigger recission of the contract between the parties. Second, Ilianes (and her cohorts) has continuously disparaged and ridiculed Nio in public, through her social media posts, and in private,

in conversations with Plaintiff and third parties. This, obviously, is directly contrary to her duty, as AH's alleged principal, to take all reasonable measures to further Plaintiff's musical career and to act in good faith in carrying out those efforts. Third, Defendants are intentionally preventing Plaintiff from fulfilling his own obligations under the Agreement by preventing the release of new music and new videos. Had Plaintiff known that the defendants would eventually stonewall his career while he was in his most successful moment, he would have never signed the Agreement in the first place. Of course, had Flow been alive, this never would have happened. These breaches have been caused by Ilianes and only Ilianes.

As to the third element, the damages to Plaintiff's career and the emotional damages that have stemmed therefrom are obvious. Plaintiff has suffered a loss of potential profits and the derailment of the release of his LP, which has been caused by by AH's refusal to give approval for the release of Plaintiff's music, despite Flow having approved the release of Plaintiff's EP prior to his death. Defendants' actions not only undercut Plaintiff's ability to make money from music that he has already created, as well as receive accountings of monies generated by music that has already been released, but their actions also prevent Plaintiff from properly promoting his music and his brand, which in turn lead to lost opportunities for the growth of his career and his status in the Latin music industry. Finally, Nio has suffered and continues to suffer damages to his reputation and loss of goodwill because of Ilianes' comments on social media.[3]

---

[3] The Court should not lose sight of the fact that the person behind all of these breaches, Ilianes, has a very precarious claim to the proverbial AH throne. As alleged in the Complaint, her status as personal representative of Flow's estate, which is what enables her to act on AH's behalf, is being litigated in the Polk County Probate Court. Upon information and belief, and evidence will be presented to these effects, her probability of being held to be the personal representative of Flow's estate are very low. Specifically, the will she claims Flow executed, which names her as his sole heir, is very questionable and there is a likelihood that Flow's only surviving daughter will be named personal representative of his estate. Thus, the person that is leading the efforts to derail Plaintiff's career is in a position to do so because she very likely seized control over AH's affairs unlawfully. The Court should be mindful of this fact when it analyzes Plaintiff's probability of success, as well.

### *b.  Plaintiff has suffered, and continues to suffer, irreparable harm as a result of the defendants' contractual breaches and malicious conduct.*

Irreparable harm entails any serious injury that cannot be quantified, i.e., the party suffering the injury cannot be made whole by the payment of monetary damages alone. ABC Charters, Inc. v. Bronson, 591 F. Supp. 2d 1272, 1309 (S.D. Fla. 2008). To satisfy this requirement, a movant must show a significant threat of irreparable harm, and not merely rely on remote or speculative injuries. *See*, Ruffin v. Great Dane Trailers, 969 F.2d 989, 995 (11th Cir. 1992). Even though claims of economic loss are said to not constitute irreparable harm because they can be calculated and fully compensated, the Court has stated that "where it is difficult or impossible to measure the dollar amount of the potential loss, money damages are inadequate, and the harm is deemed irreparable." South Florida Limousines v. Broward County Aviation Dept., 512 So. 2d at 1062; Tamiami Trail Tours, Inc. v. Greyhound Lines, Inc., 212 So. 2d 365, 366 (Fla. 4th DCA 1968); Similarly, Corpus Juris Secundum states: "An injury may be irreparable if there is no accurate pecuniary standard for measuring damages with certainty, or if the damages can be estimated only by conjecture." 43A C.J.S. Injunctions § 69. Here, the monetary loss caused by the defendants' breaches of the Agreement are impossible to calculate. The same is true for Plaintiff's loss of professional good will.

Professional or personal goodwill is defined as, "good will that is based on the personal attributes of the individual such as personal skill, training, or reputation." Basile Baumann Prost Cole & Assocs., Inc., v. BBP & Assocs. LLC., 875 F. Supp. 2d 511, 525 (D. Md. 2012) (citing 38 Am.Jur. 2d *Good Will § 4.*). "The loss of customers and goodwill is an irreparable injury," and "an injury to reputation, goodwill, or competitive advantage is not always irreparable for the purposes of determining whether a preliminary injunction should be granted, but it may be so if the loss threatens the very existence of the movant's business. Ferrero v. Associated Materials Inc., 923

F.2d 1441, 1449 (11th Cir. 1991); 43A C.J.S. Injunctions § 71. Success in the music industry is fleeting. Plaintiff is at the height of his career and has been unable to release music for several months due to the defendants' refusal to honor their side of the Agreement. If the Court fails to act to protect Plaintiff's career, and the defendants are allowed to continue maliciously destroying Plaintiff's career, there is a likelihood that Plaintiff will never recover his status as a reggaeton superstar once it is all said and done. See <u>EMI Latin v. Bautista</u>, No. 03 CIV. 0947 (WHP), 2003 WL 470333 (S.D.N.Y. Feb. 24, 2003)(Finding that loss of goodwill and business relationships are "injuries and damages are incapable of being fully remedied by monetary damages and as such . . . [constitute] irreparable harm.").

*c.     The harm to Plaintiff in not issuing the Preliminary Injunction far outweighs the potential harm to the defendants if the Preliminary Injunction is issued.*

Plaintiff has already established a likelihood of success on the merits and the irreparable harm he is suffering and will continue to suffer if this motion is denied. To summarize, Nio is not only losing income from his approved songs not being released, but he is also losing the opportunity to grow his career by continuing to add to his catalog of hits, collaborate with other artists, and expand the reach of his brand. Every day that goes by without Plaintiff being able to release new music is a day where he loses listeners and fans. This is all in addition to the damages to his reputation caused by Ilianes unfounded personal, and very public, attacks against him. If the Court does not act to stop this malicious conduct, Plaintiff's career will be virtually destroyed.

On the other hand, if AH is put into receivership and Nio is allowed to continue releasing music, that would only help further AH's interests. At the moment, AH is being headed by a person that is clearly unfit to run a recording label, not to mention a person who has a very dubious legal claim over the helm of AH. A receiver will act in the best interest of the corporation, unburdened

by unjustified personal animosity, and will grow AH's brand and its earnings. On that same vein, if Nio is allowed to release new music, he will generate royalties for himself and for AH, thus expanding AH's business and growing the career of AH's prized asset. In other words, if this motion is denied, both parties stand to suffer a great deal of harm.

*d.*     *The public interest is futhered by granting this motion.*

Because the parties in this claim are two private entities, this factor does not play a significant role in granting the injunction. However, the Court should act to enforce contracts and to force parties to comply with their contractual obligations, as the public interest is unquestionably furthered by parties abiding by their contractual duties. This factor also supports the granting of this motion.

## C.     CONCLUSION

Plaintiff has plainly satisfied all the relevant prongs that he must meet prior to the Court granting of this motion. He has demonstrated a likelihood of success of the merits, a threat of irreparable harm, a greater loss to him if the motion is denied than to defendants if it is granted, and public interest in granting of this motion. The Court should therefore grant this motion, place AH into temporary receivership, and enter an order permitting Plaintiff to release new music while this case runs its ordinary course.

**WHEREFORE**, the plaintiff respectfully requests that the Honorable Court GRANT this motion as requested, with any relief it deems just and proper.

RESPECTFULLY SUBMITTED, on this 8th day of September 2022.

By:     */s/Edwin Prado-Galarza*
**Edwin Prado-Galarza, Esq.**
**PRADO LAW OFFICES, LLC**
513 W. Colonial Dr, Unit 5.
Orlando, FL, 32804

11

Tel. (407) 420-7926 / (787) 977-1411  
E-Mail: pradolaw10@gmail.com  
Florida Bar No. 1008115  

*and*

Javier F. Micheo Marcial, Esq. (FBN 1009694)  
javier.micheo@dmralaw.com  
Juan C. Ramos-Rosado, Esq. (FBN 1002562)  
juan.ramos@dmralaw.com  
Manuel A. Franco, Esq. (FBN 126443)  
manuel.franco@dmralaw.com  
**DMRA LAW LLC**  
1111 Brickell Avenue, Ste. 1550  
Miami, FL 33131  
Telephone: 305-548-8666  

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 8, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system and have served same via U.S. Mail to those counsel(s) who are not authorized to Notice of Electronic Filing, if any.

By:   */s/Edwin Prado-Galarza*  
**Edwin Prado-Galarza, Esq.**  
**PRADO LAW OFFICES, LLC**  
513 W. Colonial Dr, Unit 5.  
Orlando, FL, 32804  
Tel. (407) 420-7926 / (787) 977-1411  
E-Mail: pradolaw10@gmail.com  
Florida Bar No. 1008115